**SIGNED.**



**Dated: March 12, 2009**

_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**
_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

In re:                                    ) **OPINION**
                                          ) (All Cases are in Chapter 7)
ROBERT R. THUESON, II,                    )
————————————————— )  No. 4-08-bk-10121-JMM
                          Debtor.         )
                                          )
ARCHIE GUERRERO and MARY L.               )  No. 4:08-bk-11130-EWH
GUERRERO,                                 )
                          Debtors.        )
                                          )  No. 4:08-bk-11365-EWH
RICHARD J. IRBINSKAS and MARY P.          )
IRBINSKAS,                                )
                          Debtors.        )
————————————————— )  No. 4:08-bk-11454-EWH
MIRIAM T. CASTRO,                         )
                          Debtor.         )
————————————————— )  No. 4:08-bk-11703-EWH
LUIS J. LOPEZ, JR. and NATALIE I.         )
LOPEZ,                                    )
                          Debtors.        )
                                          )  No. 4:08-bk-12181-EWH
ANNETTE MAZON,                            )
                          Debtor.         )
————————————————— )  No. 4:08-bk-12199-EWH
CRAIG FALLENBERG,                         )
                          Debtor.         )
————————————————— )  No. 4:08-bk-13583-JMM
LUCINDA M. FRIEND,                        )
                          Debtor.         )
————————————————— )  No. 4:08-bk-10080-JMM
STEVEN V. RICHTER,                        )
                          Debtor.         )
————————————————— )  No. 4:08-bk-11393-JMM
KARL PEIPELMAN,                           )
                          Debtor.         )
————————————————— )  No. 4:08-bk-09803-EWH
MARTIN PALOMINO and ELIZABETH V.          )
PALOMINO,                                 )
                          Debtors.        )

| | |
|---|---|
| CHARLES E. WOLFSTELLER and DENISE D. WOLFSTELLER, Debtors. | ) ) ) No. 4:08-bk-10244-EWH |
| YOLANDA V. CUARON, Debtor. | ) ) ) No. 4:08-bk-11464-EWH ) |
| KEITH BOZDOG and CRYSTAL BLACKWELL, Debtors. | ) ) ) No. 4:08-bk-12297-EWH |
| GRACIELA SALAS, Debtor. | ) ) ) No. 4:08-bk-12326-EWH |
| MICAH C. JACOBS, Debtor. | ) ) ) No. 4:08-bk-11939-EWH |
| JILL S. SWISS, Debtor. | ) ) ) No. 4:08-bk-12945-JMM ) |

On January 28, 29 and 30, 2009, evidentiary hearings were held in order to determine the reasonable value of fees charged by a document preparer, Richard C. Hoyt & Associates. After consideration of the evidence, the administrative files and the law, the court now rules.

## I. **JURISDICTION**

This court has jurisdiction over these matters, which are "core" proceedings. 28 U.S.C. §§ 157(b)(2)(A) and 1334.

## II. **ISSUES IN EACH CASE**

1.  Does the bankruptcy court have sua sponte authority to review document preparer fees?

2.  What is the reasonable value of the document preparer's services?

# III. **PROCEDURE**

Over three days, the court heard evidence concerning each of the 17 cases captioned above.[1]

Each case was commenced, sua sponte, by the court's orders to show cause requiring the document preparer, Richard C. Hoyt & Associates ("DP," "RCH" or "Hoyt") to justify a $400 fee for services rendered to each Debtor.

General evidence was adduced from five witnesses, which this court heard and considered as applicable to all 17 cases. Exhibits A - G and I were admitted and deemed applicable to all of the cases.

For each individual case, two of those five witnesses also testified as to the specifics of those matters. The witnesses were Christopher Hoyt and Richard C. Hoyt. As to each individual case, the court received a separate Exhibit J.

The court also took judicial notice of its entire court file in each case. *See In re E.R. Fegert, Inc.*, 887 F.2d 955, 958 (9th Cir. 1989); *In re Blumer*, 95 B.R. 143, 146 (9th Cir. BAP 1988).

Finally, because the Consumer Price Index ("CPI") was raised by one of the general witnesses, Donald Hartman, this court took judicial notice of the published CPI figures from the United States Department of Labor from 1995 to the present. FED. R. EVID. 201.

# IV. **FACTS APPLICABLE TO ALL CASES**

## 1. **James E. Mason**

James E. Mason is a computer expert in the way in which services are provided via the Internet. He has been in the computer consulting business for 30 years. He described briefly

---

[1]     In all, the court noticed up 34 cases for hearing. Some were assigned to Judge Eileen W. Hollowell, and some to this judge. The judges then, between themselves, equalized the workload. Judge Hollowell heard 17 separate cases. This judge heard 17 cases.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document        Page 3 of 31

how the Internet functions, and how information is shared through, among other things, certain websites. He noted that there are numerous Internet providers of bankruptcy document preparation services. The manner of providing bankruptcy information to consumers varies in degree of "expertise," service and price. (*See* Ex. D, E.)

Mr. Mason also opined that if a business uses a computer in its office, there is an overhead component associated therewith, for the hardware, software and training.

## 2. **Donald Hartman**

Donald Hartman is the DP's Certified Public Accountant. He handles tax and accounting affairs for approximately 100 small businesses. One of his clients is the DP in this case, "Richard C. Hoyt and Associates."

Although he opined that $85 per hour was "reasonable" in order for the DP to be a "profitable business," the court notes that this witness is not a qualified expert in the field of bankruptcy law. He stated that he was not an attorney at law and therefore had never practiced law. Nor did he testify that he had ever been certified as a document preparer. Therefore, his knowledge as to what is a "reasonable" fee comes from a different perspective than what this court must decide. In that regard, Mr. Hartman testified that he was unfamiliar with the factors which drive a court's legal decision.

Mr. Hartman viewed the DP's business solely from a cost-benefit analysis. He tied the rise in costs to the CPI, calling it a "fairly consistent gauge of inflation."

Mr. Hartman noted that the DP, here, also provides other form preparation services in the fields of wills, trusts, notary and divorce, as well as less complicated tax returns. However, although Mr. Hartman testified that the DP's weekly overhead was approximately $3,520 (Ex. I), he did not produce any document, nor did he testify as to what the gross income was for this DP, nor offer the DP's tax returns. Consequently, Mr. Hartman did not tie his opinion of an $85 per hour "reasonable" rate to the DP's actual income and expenses. Thus, this court has no way to know,

4

from the evidence presented, what the DP's <u>other</u> services bring to the bottom line of "Richard C. Hoyt & Associates."

Finally, Mr. Hartman noted that the DP here is "in business for no other reason than to make a profit."

### 3. **Allen D. Merrill**

Allen D. Merrill is also a document preparer. He, like the DP in this case, is certified. He too testified that, as a document preparer, his "only purpose was to make a profit."

Mr. Merrill no longer offers document preparation services related to bankruptcy proceedings, finding it unprofitable at the current accepted rate of $200 per case. He noted that, with the advent of the revised Bankruptcy Code in 2005 (The Bankruptcy Abuse Prevention and Consumer Protection Act--BAPCPA), the number of forms, and therefore the cost, had increased.

Mr. Merrill agreed with Richard C. Hoyt's opinion that a routine bankruptcy case took approximately 5.0 hours to process. (*See* Ex. C.)

Mr. Merrill charges $125 per hour for his document preparation services, which include wills, trusts and tax preparation, but not bankruptcy.

Although Mr. Merrill noted that he had no familiarity with any of the 17 cases which this court is considering today, he nonetheless opined that, at an average 5.0 hours per case, $85 per hour and $400 per case was "reasonable."

### 4. **Christopher Hoyt**

Christopher Hoyt is an independent contractor, who works full time for RCH. The document preparation business is a family one: Richard C. Hoyt is the father, and Christopher and David Hoyt are his sons. The DP pays them "commissions" (Ex. I), withholds no taxes for them and offers them no company benefits, such as health insurance.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 5 of 31

1    Christopher Hoyt's "primary function is to type documents," and input the information

2    received from the intake interview (conducted exclusively by Richard C. Hoyt) onto the bankruptcy

3    forms. These forms are part of a computer software package known as "E-Z Forms." Ninety

4    percent (90%) of Christopher Hoyt's document preparation work relates to bankruptcy cases,

5    although he sometimes helps out in the other document preparation fields handled by the DP firm,

6    including, divorce, child support, family law, wills, trusts, powers of attorney and taxes.

7    Christopher Hoyt, once the information is typed into its final form, passes it along to

8    his brother, David, who checks for accuracy and arranges a final interview with the customer-debtor.

9    Once the documents are approved, they are printed out so that the customer may file them with the

10   court.

11   Christopher Hoyt is a certified document preparer, as are the other individual

12   members, and as is the firm itself.

13   Before these court-ordered show cause orders were issued, no time sheets or summary

14   sheets were kept by the DP, but since these orders were issued, the firm's members have

15   reconstructed their time and effort as to each case. (*See* Ex. J in each case.) While, generally, each

16   case ranged in time, the average was about 5.0 hours, with "over and under" exceptions specific to

17   each case.

18   Christopher Hoyt has been preparing bankruptcy petitions, schedules and related

19   initial documents for eight years and, in general, it can be said that his work is well-done, accurate

20   and without problem for the court and its staff. As a document preparer, the court has no difficulty

21   with either his competence or his work product, and the DP's reputation is a good one.

22   Christopher Hoyt recognizes that he cannot give legal advice, and is prohibited by

23   statute from doing so. He resists the temptation when asked by customers. Mr. Hoyt noted that he

24   "just prepares forms. I don't represent them [the debtors]."

25   Christopher Hoyt types the information into a computer program, and some of the

26   information is also automatically transferred onto several other forms. To a large degree, the

27   computer saves time and produces a cleaner-looking work product. But it also has inefficiencies or

28

requires the application of human judgment.  In the final analysis, Christopher Hoyt concluded that whether he typed on a typewriter or a computer, it would take about the same time.

In 85% of the cases, Christopher Hoyt will be required to call a customer in order to clear up a discrepancy in the collected information, and to obtain answers to perceived inconsistencies.

Once the forms are completed and signed, two copies are given to the customer.  One is filed by the debtor at the courthouse, and the other is the debtor's copy.  Once the debtor files the original, Christopher Hoyt then "uploads" the same information electronically, using the court's Electronic Case Filing (ECF) technology.

Christopher Hoyt's actual typing and information-clarifying activities, on average, take about 3.0 hours.  This includes typing, phone calls, follow-up and uploading the documents into ECF.

## **5. Richard C. Hoyt**

Richard C. Hoyt is the 100% shareholder of RCH.  He is a certified document preparer.

The business rents a five-office suite at 7229 N. Thornydale, and owns furniture, computers, a copy machine and other business equipment.  Weekly overhead is $3,520 per week, consisting of:

| | |
|---|---|
| Commissions and Compensation | $2,510 |
| Rent | 300 |
| Utilities | 65 |
| Ongoing Education, Training and Certification | 55 |
| Phone and Cell | 95 |
| Advertising | 310 |
| Supplies | 60 |

7

| | |
|---|---|
| Travel | 25 |
| Copier Contract | 30 |
| Bank Fees and CC Fees | 20 |
| Software: BK, Tax, Trusts, Wills | 25 |
| Internet | <u>25</u> |
| **Total** | **$3,520** |

(Ex. I.)

Prior to July 15, 2008, RCH charged customers $200 for their bankruptcy document preparation services. Then, on July 15, 2008, RCH decided to raise its rates to $400 per case.

This decision was preceded by an effort to advise the U.S. Trustee of its intentions, to which RCH received no response (Ex. A). In addition, Richard C. Hoyt consulted with legal counsel as to the legal issues confronting such a business decision, and finally felt that various "test cases" would be the best way to bring the issue before the courts. Richard C. Hoyt did not make this decision without due deliberation, and in the end, felt it presented the best--and only--way to obtain a decision on the issue of whether the $200 accepted fee was still valid.

Richard C. Hoyt based this new rate of $400 per case upon a need for profitability (Ex. I), and simply divided his weekly overhead by 40 hours, arriving at the $85 per hour rate.[2]

As the other witnesses stated, Richard C. Hoyt approached the situation presented here from a business perspective, looking at the profitability of a fee of $400 per case versus a fee of $200 per case.

Richard C. Hoyt testified that he was in business to make a profit, and that he could no longer afford to do bankruptcy cases if he is limited to $200 per case.

As for the document preparation process itself, Richard C. Hoyt conducts the initial intake interview, explains the general process, does not offer any legal advice and walks the customer through a questionnaire, from which the schedules, statement of financial affairs and other initial filing documents are then typed up.

---

[2]     Mathematically, the figure comes to $88 per hour.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 8 of 31

Richard C. Hoyt emphasized that neither he nor anyone in his office gives legal advice, that they so advise the customers and that placards are posted which also bear that warning. If a case is below the "median" for the applicable "Means Test," then the DP will accept those cases. However, if the dollar amounts are above the median, then those cases are referred out to an attorney.

Richard C. Hoyt did not present any tax returns from the business, nor offer any information as to how much the other DP non-bankruptcy services contributed to the DP's bottom line (such as wills, trust, divorce and tax return preparation).

## V. **FACTS APPLICABLE TO SPECIFIC CASES**

Against this general backdrop, then, both Christopher and Richard C. Hoyt offered additional testimony (and a corresponding Ex. J) as to the following specific matters. Each will be discussed in turn.

### 1. **Robert R. Thueson, II, 4-08-bk-10121-JMM**

The Debtor filed a voluntary chapter 7 petition on August 7, 2008.

The Debtor was assisted in the preparation of his bankruptcy schedules and other pertinent documents by the bankruptcy preparation service of Christopher Hoyt of RCH.

For these services, RCH charged and received $400.

The documents which Christopher Hoyt (or members of his office staff) prepared were:

      (1)     Petition (four page form).

      (2)     Statement of Social Security Number (one page form).

      (3)     Declaration of Evidence of Employer's Payments Within 60 Days (one page form).

9

1     (4)  Individual Debtor Statement of Current Monthly Income and

2        Means Test Calculation Form B22A (eight page form, five of

3        which contained no typewritten information and were left blank)

4        (the "Means Test.")

5     (5)  Summary of Schedules (one page form).

6     (6)  Statistical Summary of Certain Liabilities and Related Data

7        (one page form).

8     (7)  Schedules A through J (15 page form).

9     (8)  Statement of Financial Affairs (five page form).

10     (9)  Individual Debtor's Statement of Intention (one page form).

11     (10)  Notice to Debtor by Non-Attorney Bankruptcy Petition Preparer

12        (two page form).

13     (11)  Master Mailing List (two page form).

14     (12)  Disclosure of Compensation of Bankruptcy Preparer (three page

15        form).

16    Each of these documents are official forms, with blanks or checkmark boxes for filling

17 in specific information.

18    The Debtor has one secured creditor, secured by a lien of $8,439 on a vehicle (a 2005

19 Ford Focus) worth $7,025.

20    The Debtor and his wife earn $3,120.34 per month, and their expenses (for a family

21 of four), total $3,181 per month (Schedules I and J).

22    The Debtor listed debts owing to 12 unsecured creditors totaling $39,537.

23    The Debtor has no priority debts.

24    Of the 18 questions listed on the Statement of Financial Affairs, the Debtor checked

25 the "None" box on 14 questions, and answered four questions (Nos. 1, 2, 9 and 16).

26    The Debtor indicated that he would reaffirm the debt on one of his vehicles, and filled

27 in the description of the vehicle, and checked three places on that form.

28

10

Case 4:08-bk-10121-JMM Doc 48 Filed 03/12/09 Entered 03/12/09 14:51:36 Desc
Main Document Page 10 of 31

1       Christopher Hoyt testified that he spent 2.0 hours on this Debtor's case, consisting of
2 organization and typing.

3       This court accepts electronic filing, and this case was so filed, after the Debtor paid
4 the filing fee and filed the original paperwork.

5       Christopher Hoyt filled in various informational fields, on a bankruptcy forms package
6 which is a software application for a computer.

7       Richard C. Hoyt testified that he spent a total of 1.0 hours with Mr. Thueson, and the
8 total time spent by all RCH members was 4 hours, 10 minutes (Ex. J).

9

10 **2.  Archie and Mary L. Guerrero, 4:08-bk-11130-EWH**

11

12       Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual
13 similarities to the <u>Thueson</u> case, above.  For the work done on this case, the entire office spent a
14 total of 5 hours, 20 minutes (Ex. J).

15       This case was, according to Christopher Hoyt, "about average" and had "nothing
16 remarkable" to set it apart from other routine cases.

17       The Guerreros were charged $400.

18

19 **3.  Richard J. and Mary P. Irbinskas, 4:08-bk-11365-EWH**

20

21       Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual
22 similarities to the <u>Thueson</u> case, above.  For the work done on this case, the office spent a total of
23 4 hours, 55 minutes (Ex. J).

24       This case was, according to Christopher Hoyt, "about average" and had "nothing
25 remarkable" to set it apart from other routine cases.

26       The Irbinskas were charged $400.

27

28

1

**4. Miriam T. Castro, 4:08-bk-11454-EWH**

2

3       Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual

4 similarities to the <u>Thueson</u> case, above. For the work done on this case, the office spent a total of 5

5 hours, 25 minutes (Ex. J).

6       This case was, according to Christopher Hoyt, "about average" and had "nothing

7 remarkable" to set it apart from other routine cases.

8       Ms. Castro was charged $400.

9

10

11       **5. Luis J. (Jr.) and Natalie I. Lopez, 4:08-bk-11703-EWH**

12

13       Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual

14 similarities to the <u>Thueson</u> case, above. For the work done on this case, the office spent a total of

15 4 hours, 55 minutes (Ex. J).

16       This case was, according to Christopher Hoyt, "about average" and had "nothing

17 remarkable" to set it apart from other routine cases.

18       The Lopezes were charged $400.

19

20       **6. Annette Mazon, 4:08-bk-12181-EWH**

21

22       Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual

23 similarities to the <u>Thueson</u> case, above. For the work done on this case, the office spent a total of

24 4 hours, 50 minutes (Ex. J).

25       This case was, according to Christopher Hoyt, "about average" and had "nothing

26 remarkable" to set it apart from other routine cases.

27       Ms. Mazon was charged $400.

28

1      ### 7. **Craig Fallenberg, 4:08-bk-12199-EWH**

2

3            Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual

4      similarities to the Thueson case, above.  For the work done on this case, the office spent a total of 5

5      hours, 35 minutes (Ex. J).

6            This case was, according to Christopher Hoyt, "about average" and had "nothing

7      remarkable" to set it apart from other routine cases.

8            Mr. Fallenberg was charged $400.

9

10

11     ### 8. **Lucinda M. Friend, 4:08-bk-13583-JMM**

12

13           Both Christopher Hoyt and Richard C. Hoyt testified that this case had factual

14     similarities to the Thueson case, above.  For the work done on this case, the office spent a total of

15     4 hours, 45 minutes (Ex. J).

16           This case was, according to Christopher Hoyt, "about average" and had "nothing

17     remarkable" to set it apart from other routine cases.

18           Ms. Friend was charged $400.

19

20     ### 9. **Steven V. Richter, 4:08-bk-10080-JMM**

21

22           This case involved slightly more complex issues.  The Debtor had about 39 creditors,

23     required more extensive cross-checking, and the Debtor wanted all of the creditors on his credit

24     report listed, even those which showed no balances owing.  In addition, there were some

25     amendments to the schedules involving the Debtor's three guns.  For the work done on this case, the

26     office spent a total of 5 hours, 20 minutes (Ex. J).

27           Mr. Richter was charged $400.

28

### 10. Karl Peipelman, 4:08-bk-11393-JMM


This case required slightly more contact, obtaining answers to questions about pay stubs and tools, and deciphering the Debtor's handwriting. For the work done on this case, the office spent a total of 5 hours, 50 minutes (Ex. J).

Mr. Peipelman was charged $400.


### 11. Martin and Elizabeth V. Palomino, 4:08-bk-09803-EWH


This case was outside the norm in that the Debtors had three employers over a six-month period, seven payday loans and three lawsuits. They also had between 33 and 40 creditors. For the work done on this case, the office spent a total of 6 hours, 35 minutes (Ex. J).

The Palominos were charged $400.


### 12. Charles E. and Denise D. Wolfsteller, 4:08-bk-10244-EWH


These Debtors required more personal attention, calling the office more than the usual amount, having a large number of creditors (over 90), resulting in their case taking longer than anticipated to gather all necessary information. For the work done on this case, the office spent a total of 9 hours, 40 minutes (Ex. J).

The Wolfstellers were charged $400.


### 13. Yolanda V. Cuaron, 4:08-bk-11464-EWH


This case had minor issues involving a Honda quad motor bike, and its value and description. Also, the Debtor's mother lived with her and contributed to the monthly income, which

required some sorting out.  For the work done on this case, the office spent a total of 4 hours, 35 minutes (Ex. J).

Ms. Cuaron was charged $400.

### 14.  <u>Keith Bozdog and Crystal Blackwell, 4:08-bk-12297-EWH</u>

This case had more than the usual number of phone inquiries, revolving around the value of Wal-Mart stock, and whether a listed pool table and slot machine did or did not exist.  For the work done on this case, the office spent a total of 5 hours, 50 minutes (Ex. J).

Mr. Bozdog and Ms. Blackwell were charged $400.

### 15.  <u>Graciela Salas, 4:08-bk-12326-EWH</u>

The only unusual problem regarding this case had to do with the fact that the Debtor owned no furniture.  For the work done on this case, the office spent a total of 5 hours (Ex. J).

Ms. Salas was charged $400.

### 16.  <u>Micah C. Jacobs,  4:08-bk-11939-EWH</u>

Working with the Debtor to straighten out his vehicle ownership status required the office to spend a total of 5 hours, 35 minutes on this case (Ex. J).

Mr. Jacobs was charged $400.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 15 of 31

1

**17. Jill S. Swiss, 4:08-bk-12945-JMM**

2

3        Confusion, by the Debtor, over her marital status, added some time-consuming work

4   to this relatively minor case (the Debtor only had nine creditors.)  For the work done on this case,

5   the office spent a total of 4 hours, 35 minutes (Ex. J).

6        Ms. Swiss was charged $400.

7

8                              **VI.  LEGAL ANALYSIS**

9

10        **A.  THE COURT'S SUA SPONTE AUTHORITY TO REVIEW FEES**

11

12                          **(1)  Historical Perspective**

13

14        Section 110 was enacted as part of the Bankruptcy Reform Act of 1994, to govern,

15   for the first time, the activities of nonlawyer document preparers, who "had proliferated across the

16   country," and provide various sanctions for impermissible activity.  As Congress explained:

17

18            Bankruptcy petition preparers not employed or supervised by any attorney
             have proliferated across the country. While it is permissible for a petition
19           preparer to provide services solely limited to typing, far too many of them also
             attempt to provide legal advice and legal services to debtors. These preparers
20           often lack the necessary legal training and ethics regulation to provide such
             services in an adequate and appropriate manner. These services may take
21           unfair advantage of persons who are ignorant of their rights both inside and
             outside the bankruptcy system.

22

23   H.R. Rep. 103-835, 103rd Cong., 2nd Sess. 56 (Oct. 4, 1994), *as reprinted in* 1994 U.S.C.C.A.N

     3340, 3365.
24

25        Given the predicament of debtors who are at the "end of their ropes," some judges

26   were skeptical that such nonlawyer document preparers would ever be "angels," rather than

     "vultures." Hon. A. Jay Cristol, *The Nonlawyer Provider of Bankruptcy Legal Services: Angel or*
27
     *Vulture?,* 2 AM. BANKR. INST. L. REV. 353, 357 (1994).  And, in the years leading up to the 1994
28

amendment, courts took their role of scrutinizing the practice of petition preparers in accord with the Bankruptcy Code quite seriously. As one court stated:

> Congress in its wisdom, or perhaps as a result of life time experience, was also aware that when death is about to occur, vultures circle the dying, waiting for an opportunity to personally profit from the misfortune of another. Congress enacted a number of safeguards to prevent the financially distressed from being preyed upon by the vulture type in our society. Federal Rules of Bankruptcy Procedure 2014 and 2016, and 11 U.S.C. §§ 327-330, were created in an effort to make certain that help provided to afflicted victims of financial distress is provided at a fair and reasonable rate. Gouging, overreaching or taking advantage of the financially afflicted is to be avoided whenever possible. The Court has taken judicial notice of the situation in California where so-called typing services have taken outrageous advantage of clients and creditors and have distorted the intent of the Bankruptcy Code for their own personal profit, notwithstanding the fallout upon the debtors to whom they provide services and the creditors that they sometimes abuse in the process.

*In re Calzadilla*, 151 B.R. 622, 625 (Bankr. S.D. Fla. 1993).

Congress does not write on a clean slate. For as long as bankruptcy law has existed-- e.g., the first federal bankruptcy act passed by Congress in 1800--bankruptcy law has been amended, in part, in response to administrators and legal professionals picking off the last remaining flesh from unsuspecting, desperate and vulnerable debtors.

For example, one reason for the repeal of the 1867 Act--the third national bankruptcy act--was that the courts were allowing excessive fees to trustees and attorneys practicing in bankruptcy. The bankruptcy estates were being "eaten up by a most vicious fee system." *In re Wells*, 114 F.222, 224 (W.D. Mo. 1902); *see generally* David S. Kennedy & R. Spencer Clift, *An Historical Analysis of Insolvency Laws and Their Impact on the Role, Power, and Jurisdiction of Today's United States Bankruptcy Court and its Judicial Officers*, 9 J. BANKR. L. & PRAC. 165, 174 (2000).

The fourth and most notable of the early "Bankruptcy Acts" was the Chandler Act of 1898. This Act delegated more functions and duties to "bankruptcy referees" who were subject to the supervision of the district court. In 1938, the act was overhauled and referees were converted into "judicial officers." The Act was officially rechristened the "Bankruptcy Act" in 1950. *See* Frank R. Kennedy, *A Brief History of the Bankruptcy Reform Act*, 58 N.C. L. REV. 667 (1980). It was not until 1973 that the Supreme Court renamed bankruptcy referees "United States bankruptcy

17

judges," pursuant to the Bankruptcy Rules under the Rules Enabling Act, 28 U.S.C. § 2075. *See* D. Kennedy & R. S. Clift, *supra,* at 176-77.

Nonetheless, between 1973 and 1978, bankruptcy judges performed dual administrative and judicial functions. This dual role was considered a deficiency of the Bankruptcy Act, in light of the stunning growth in bankruptcies across the country, and the need to have judges concentrate their efforts on the adjudication of controversies. *See Report of the Commission on the Bankruptcy Laws of the United States*, H.R. Doc. No. 93-137, 93rd Cong., 1st Sess., Pt. I (1973).

Many, at the close of the 1970's, believed that the bankruptcy system should be relegated to an administrative agency and not a judicial function, but that view was criticized by bankruptcy judges and practitioners. F. Kennedy, *supra,* at 671 & n.23. The proponents of a stronger judiciary emphasized judicial experience within the bankruptcy system. *Id.*

In the end, the judicial view won out with the enactment of the Bankruptcy Reform Act of 1978, which expanded the jurisdiction and role of the bankruptcy judge, as an Article I judge, selected on merit, and created the new office of the United States Trustee to relieve the judge of performing certain administrative functions. *Id.* at 675-680; *see generally Tiers of Federal Judges-- Article III and Statutory Federal Judges, Their Numbers, Selection, and Tenure*, 95 GEO. L. J. 1009, 1012 (2007).

Although one of the United States Trustee's functions was review of fee requests, it did not, or could not, always fulfill its duties in this regard, and the bankruptcy court, which had always had nonadjudicative duties unique to the bankruptcy process, was required to act in its supervisory role in order to prevent abuse in bankruptcy cases. One such abuse was that caused by "certain professionals seeking to gouge the estate for excessive fees." Hon. Stephen A. Stripp, *An Analysis of the Role of the Bankruptcy Judge and the Use of Judicial Time*, 23 Seton Hall L. Rev. 1329, 1338 (1993).

Indeed, the new Bankruptcy Code imposed a reasonableness standard, enforceable by the bankruptcy court, on attorneys' fees in a variety of circumstances where fees would be paid by the estate. For example, the standard is applied to the claims of secured creditors, whether the claim arose prepetition or postpetition, § 506(b), estate professionals applying for compensation, §§ 329

and 330(a), and other professionals seeking compensation as an administrative expense, §§ 503(b)(4) and 503(b)(5).

It is well established law that bankruptcy courts have authority to review fee applications sua sponte under §§ 329 and 330. Section 329 is implemented by Bankruptcy Rule 2017, which provides that the court, on its own initiative, may hear and determine whether an attorney fee is excessive. Fed. R. Bankr. P. 2017. *See In re Rheuban*, 121 B.R. 368, 379 (Bankr. C.D. Cal. 1990) (discussing former § 60(d), the predecessor to § 329, which was "administrative in character"); *In re Zepecki*, 258 B.R. 719, 725 (8th Cir. BAP 2001), *aff'd*, 277 F.3d 1041 (8th Cir. 2002) (Rule 2017 gives a court the power to review compensation paid by a debtor; the bankruptcy court's power under section 329 coupled with Bankruptcy Rule 2017 allowed the court to act sua sponte.).

Section 330(a)(1) provides that the court may award "reasonable" attorney fees, and § 330(a)(2) provides that the court may, on its own motion, award compensation that is less than the amount requested. *See, e.g., In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir. 1994); *In re Eliapo*, 298 B.R. 392, 405 (9th Cir. BAP 2003), *aff'd in part, rev'd in part and remanded on other grounds,* 468 F.3d 592 (9th Cir. 2006); *In re Auto Parts Club, Inc.*, 211 B.R. 29, 33 (9th Cir. BAP 1997).[3]

## (2) The Document Preparer and § 110

Enter the document preparer. As stated above, Congress saw fit to bring this new player "into the fold" by enacting § 110, in 1994. Section 110 governs what document preparers may or may not do. It is a consumer protection statute passed to "control the proliferation of

---

[3] In the early 1990's some courts, in the Eastern District of Pennsylvania, questioned whether the bankruptcy court had sua sponte authority to review fee requests under § 330. That matter was put to rest, in the affirmative, by the Third Circuit, in *Busy Beaver* , 19 F.3d at 841. Today, "the overwhelming number of bankruptcy courts that have addressed the question have held that bankruptcy courts have not only the power but also the obligation to scrutinize fee petitions sua sponte." A. Hirsch & D. Sheehey, *Awarding Attorneys' Fees and Managing Fee Litigation*, at 101 (Fed. Jud. Ctr., 2d ed. 2005).

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 19 of 31

1  bankruptcy typing mills." <u>In re Guttierez</u>, 248 B.R. 287, 292 (Bankr. W.D. Tex. 2000) (citation

2  omitted). First and foremost, petition preparers merely prepare documents for filing, and shall

3  neither execute any document on behalf of the debtor nor give legal advice. 11 U.S.C. §§ 110(a)

4  and 110(e)(1) & (2).

5  Since 2003, in Arizona, document preparers have been required to become certified,

6  and to comply with continuing education requirements. *See* ARIZ. SUP. CT. RULE 31; ARIZ. CODE

7  OF JUD. ADMIN. §§ 7-201, 7-208. In addition, the local bankruptcy rules for the district of Arizona

8  require a legal document preparer to have state certification. *See* L.B.R. 2090-2(a).

9  Pertinent to this decision are the following provisions of § 110, which govern the

10  document preparer's fees. Section 110(h) reads in pertinent part:

12  (1)  The Supreme Court may promulgate rules under section 2075 of
13       title 28, or the Judicial Conference of the United States may prescribe
       guidelines, for setting a maximum allowable fee chargeable by a
       bankruptcy petition preparer. A bankruptcy petition preparer shall
14     notify the debtor of any such maximum amount before preparing any
       document for filing for a debtor or accepting any fee from the debtor.

15  (2)  A declaration under penalty of perjury by the bankruptcy petition
16       preparer shall be filed together with the petition, disclosing any fee
       received from or on behalf of the debtor within 12 months immediately
       prior to the filing of the case, and any unpaid fee charged to the debtor.

17       . . .

19  (3)(A)  The court shall disallow and order the immediate turnover to the
         bankruptcy trustee any fee referred to in paragraph (2) found to
         be in excess of the value of any services–

21       (i)   rendered by the bankruptcy petition preparer
             during the 12-month period immediately
             preceding the date of the filing of the petition; or

23       (ii)  found to be in violation of any rule or guideline
             promulgated or prescribed under paragraph (1).

24       . . . .

25  (4)  The debtor, the trustee, a creditor, the United States trustee (or the
26       bankruptcy administrator, if any) or the court, on the initiative of the
       court, may file a motion for an order under paragraph (2).

28  11 U.S.C. § 110(h)(1)-(4).

1        Section 110(h)(1) was added by the Bankruptcy Abuse Prevention and Consumer

2   Protection Act of 2005 ("BAPCPA").  To date, there have been no maximum fee rules or guidelines

3   promulgated by either the Supreme Court or the Judicial Conference.

4        Actions arising under § 110 are core matters within the meaning of 28 U.S.C.

5   § 157(b)(2)(A) (administration of the estate), over which the bankruptcy court has jurisdiction

6   pursuant to 28 U.S.C. § 1334.  *See In re Graves*, 279 B.R. 266, 271 (9th Cir. BAP 2002).

7        Hoyt asserts the court lacks sua sponte authority to determine the reasonableness of

8   its fees because § 110(h) only allows the court, on its own initiative, to order a document preparer

9   to disclose the amount of fees collected but does not authorize sua sponte review of the

10  reasonableness of the disclosed fees.

11       Hoyt's reading of § 110(h) conflicts with a harmonious construction of § 110(h)(2)-

12  (4).  Statutory provisions are to be read in harmony in the context of the whole statute.  *In re*

13  *Hougland*, 886 F.2d 1182, 1184 (9th Cir. 1989).  All parts of a statute are to be read as a whole, and

14  in harmony with one another, and not in conflict.  *In re Chiu*, 266 B.R. 743, 750 (9th Cir. BAP

15  2001), *aff'd,* 304 F.3d 905 (9th Cir. 2002); *In re Labib-Kiyarash*, 271 B.R. 189, 195 (9th Cir. BAP

16  2001).  When read as a whole, § 110(h) gives the court sua sponte authority to order fee disclosures

17  and to review the reasonableness of the disclosed fees.  Otherwise, § 110(h)(3)(A) becomes a

18  toothless provision.  *See also In re Bernales*, 345 B.R. 206, 227 (Bankr. C.D. Cal. 2006) (issuing

19  a sua sponte order to show cause regarding fee disgorgement and ultimately requiring disgorgement

20  under § 110(h)(3)); 2 COLLIER ON BANKRUPTCY ¶ 110.09, at 110-18 (15th ed. rev. 2008) ("Section

21  110(h)(3) and (4) authorizes the court, on its own motion . . . to disallow any excessive fees paid to

22  a bankruptcy petition preparer and to order the preparer to turn over the excess to the bankruptcy

23  trustee.")

24       Such construction, of course, is consistent with the long and historic practice of the

25  court's ability to prevent fee-gouging excesses in bankruptcy cases.  For such fee reviews to apply

26  to everyone else in the bankruptcy system, but to exempt bankruptcy petition preparers, is an

27  argument which fails to appreciate the uniqueness of this legal tradition.

28

**(3)  Other Authority for Sua Sponte Review**

In its Procedural Order to Show Cause, this court outlined the authority under which it was requiring Hoyt to appear.  In addition to § 110, the court invoked § 329 and Rule 2017, and § 105.

Hoyt argues that the court cannot rely on § 329 or Bankruptcy Rule 2017 as authority for sua sponte review of document preparer fees because the provisions only apply to attorneys. This argument is without merit.  The Ninth Circuit Bankruptcy Appellate Panel has held that a court has authority under § 329 to limit a document preparer's fees.  *See In re Agyekum*, 225 B.R. 695, 698 (9th Cir. BAP 1998).  In *Agyekum* the court explained that § 329 regulates the compensation allowed to both attorneys and lay persons who prepare bankruptcy petitions.  *Id*. at 699.  *See also In re Cochran*, 164 B.R. 366, 368 (Bankr. M.D. Fla. 1994); *In re Bachmann*, 113 B.R. 769, 774 (Bankr. S.D. Fla. 1990); *In re Grimes*, 115 B.R. 639, 649 (Bankr. D. S.D. 1990).

Hoyt also contends that the court cannot rely on § 105(a) to authorize sua sponte review of fees because it does not give the court substantive authority beyond what is found in the Code.

Section 105 was added as part of the 1978 Code, and provides, in relevant part:

> (a)  The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

The core function of § 105(a) is to provide the court with the "power. . . to implement" the substantive command of other provisions of the Code.  *In re Owens Corning,* 419 F.3d 195, 209 n.14 (3d Cir. 2005), *cert. denied,* 547 U.S. 1123 (2006) (*quoting In re Kmart Corp.,* 359 F.3d 866, 871 (7th Cir. 2004)).  In enacting § 105, Congress also recognized a bankruptcy court's inherent authority to "run their courtrooms and to supervise the attorneys appearing before them."  *In re Brooks-Hamilton*, ___ B.R. ___, ___ , 2009 WL 226002, at *5 (9th Cir. BAP January 21, 2009)

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 22 of 31

(*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003).

As discussed above, §§ 110 and 329 give the court power to review document preparer fees sua sponte. As one legal scholar has written, excessive fees fall into the category of "abuse of process" in § 105(a) "because they offend creditors and other parties in interest who feel helpless to stop the offense, thereby engendering extensive public resentment against the bankruptcy court and process." Hon. S. Stripp, *supra*, at 1367. Therefore, the court is authorized to use its § 105(a) authority to implement §§ 110 and 329.

### (4) <u>Due Process</u>

Finally, Hoyt asserts that the court's sua sponte review of fees violated his procedural due process rights to have the matter decided by an impartial decision maker, and that the court was basically acting in an adversarial role.

An order to show cause is the "usual step preliminary to the initiation of a summary proceeding." *Hall v. Goggin*, 148 F.2d 774 (9th Cir. 1945). While a court is not prohibited from adjudicating a proceeding raised sua sponte, the court must provide fair notice and an opportunity for a hearing. The Ninth Circuit has held, in the context of a § 330(a)(1) fee award, that if the bankruptcy court materially reduces the fee requested, Bankruptcy Rule 2017(b) requires that court to first provide notice and a hearing. *In re Eliapo*, 468 F.3d 592, 602 (9th Cir. 2006).

The Ninth Circuit "emphasize[d] that the notice-and-hearing definition in § 102(1) is flexible and sensitive to context" but that "the essential point is that the court should give counsel a *meaningful* opportunity to be heard." *Id*. (*citing Busy Beaver*, 19 F.3d at 846 n.16). As the *Eliapo* court further explained, all that is required is that the applicant be given a reasonable opportunity to present legal argument and/or evidence to clarify or supplement a fee application. *Id*.

In this proceeding, Hoyt was given fair notice and an opportunity to present legal argument and evidence. The order to show cause noticed Hoyt of the alleged violations of § 110.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 23 of 31

After the initial status hearing on the order to show cause, the court issued a Procedural Order to Show Cause setting the procedures and deadlines to be used at the hearings. The court then conducted evidentiary hearings in which Hoyt had the opportunity to present legal arguments, expert testimony, witnesses, and documentary evidence. These hearings occurred over three separate days, with a fourth day for argument.

Hoyt maintains, nonetheless, that an impartial decision maker is a requirement of due process, citing *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Hoyt contends that the court was not impartial, because it had already arrived at an adverse legal position by issuing an order to show cause regarding the reasonableness of the DP fees.

*Goldberg* is not on point. There, the Supreme Court reviewed a welfare recipient's <u>final</u> eligibility determination following termination of benefits. The Court held that due process required the opportunity for a pre-termination evidentiary hearing, which had not been given. *Id.* at 264. In discussing the requirement for an impartial decision maker, it stated: "[w]e agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review." *Id.*

In this proceeding, unlike the situation in *Goldberg*, no final determination was made by the court prior to hearing evidence on the issue. In fact, the court's final decision is in accordance with *Goldberg* as it "rest[s] solely on the legal rules and evidence adduced at the hearing." *Id.*

Moreover, concerning judicial bias, the Supreme Court has stated:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Therefore, the court concludes that Hoyt's due process rights have been satisfied as required by *Eliapo*.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 24 of 31

# B. <u>REASONABLENESS OF THE FEES</u>

The sole remaining issue in each of these cases is what constitutes a fair and reasonable price for the work performed by a certified document preparer. As noted above, the exercise of this power has strong historical roots, and sound reasoning.

Section 329 utilizes the same reasonableness test as § 330. *In re Basham*, 208 B.R. 926, 931 (9th Cir. BAP 1997), *aff'd*, 152 F.3d 924 (9th Cir. 1998). "The customary method for assessing an attorney's fee application in bankruptcy is the 'lodestar,' under which 'the number of hours reasonably expended' is multiplied by 'a reasonable hourly rate' for the person providing the services." *Eliapo*, 468 F.3d at 598 (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir.1991)). "However, the lodestar method is not mandatory." *Id.*

In addition, a court may utilize its own knowledge of, and experience with, market rates and fees charged in comparable cases as a guide. *See In re Doser*, 281 B.R. 292, 301 (Bankr. D. Idaho 2002), *aff'd,* 412 F.3d 1056 (9th Cir. 2005) (judge's experience with petition preparer fees in the district); *In re Rauch,* 110 B.R. 467, 477 (Bankr. E.D. Cal. 1990); *In re McMullen*, 273 B.R. 558, 562 (Bankr. C.D. Ill. 2001).

As noted above, a document preparer may not give legal advice nor represent a client-customer in court or before any other agency, and is limited to the task of "preparing bankruptcy documents" for filing with the court. This preparation involves discussion with debtors, gathering information from them to place into the standard, pre-printed bankruptcy forms and typing or otherwise inputting that gathered information into the necessary forms.

As this court noted in the *In re Kassa* case, written almost thirteen years ago, these tasks are "something that a trained legal secretary can do, no more and no less." *In re Kassa*, 198 B.R. 790 , 791 (Bankr. D. Ariz. 1996), *aff'd*, 232 B.R. 822 (9th Cir. BAP 1999). The court, in 1996, then observed that a legal secretary earned approximately $16.82 per hour and applied a 12-hour standard to the assigned tasks. From that calculation, the court arrived at the present $200 fee still used in the District to this day.

What, then, has changed since 1996? First, as the accountant, Mr. Hartman, testified, inflation has crept up steadily. Mr. Hartman noted that the best, and most accepted, gauge of that inflation rate is the CPI, used by the United States Department of Labor, and published widely. So widely, in fact, that this court can take judicial notice of its reports. FED. R. EVID. 201.

Second, the typewriters or personal computers used in 1996 have improved to the point where the input of information has been simplified, and information's internal organization within the documents themselves is easier. In total time, however, the evidence suggests that it still takes about the same time as it always did.

Third, the passage of the current BAPCPA additions to the Bankruptcy Code have added extra paperwork and necessary documents. But the testimony in this case did not reflect that an inordinate amount of extra work was needed for those new tasks to be accomplished, or the forms completed.

Fourth, this court has had nagging concerns about *Kassa* since publishing it in 1996, which it could not express until now, given this new challenge to the *Kassa* reasoning, and the evidence presented. In *Kassa*, the court noted that it took about 12 hours to gather information and put it into the schedules. In retrospect, this figure seemed too high, and now the evidence in these cases has confirmed those long-held suspicions. The evidence in these cases supports a finding that an average, routine case only takes about five hours to prepare, from initial meeting to final document production.

Thus, the court must consider the CPI, and bring it forward from 1996, to arrive at a current hourly rate for a legal secretary. Thus, the calculation is:

| Year | Legal Secretary Hourly Rate | Inflation | Rate for Following Year |
|------|------|------|------|
| 1996 | $16.32 | 3.0 | $16.80 |
| 1997 | 16.80 | 2.3 | 17.18 |
| 1998 | 17.18 | 1.6 | 17.45 |
| 1999 | 17.45 | 2.2 | 17.83 |
| 2000 | 17.83 | 3.4 | 18.43 |
| 2001 | 18.43 | 2.8 | 18.94 |

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document    Page 26 of 31

| | | | |
|---|---|---|---|
| 2002 | 18.94 | 1.6 | 19.24 |
| 2003 | 19.24 | 2.3 | 19.68 |
| 2004 | 19.68 | 2.7 | 20.21 |
| 2005 | 20.21 | 3.4 | 20.89 |
| 2006 | 20.89 | 3.2 | 21.55 |
| 2007 | 21.55 | 2.8 | 22.15 |
| 2008 | 22.15 | 3.8 | 22.99 |

U.S. Department of Labor, Urban Consumer Price Index, ftp://ftp.bls.gov/pub/special.requests/ cpi/cpiai.txt.[4]

A consistent theme of the DP's presentation of evidence in the cases at bar here dealt with the issue of whether the preparation of bankruptcy documents is "profitable" at $200 per case. For the court, "profitability" is an immaterial factor. What the court is charged with is a determination of the reasonable value of the service provided. When one determines that the best measure of that service is most closely akin to that of a legal secretary, the hourly rate suggests only $23 per hour, not $85. "Profitability" is a business issue, not a legal one. If a business decides that $23 per hour is unsatisfactory, then it can also decide whether or not to continue to offer that service. The bankruptcy courts are not charged with the legal responsibility, under § 110, of ensuring that document preparation offices make a profit. The focus of the statute is directed to protection of the consumer, not the well-being of the document preparation service.

## VII.  APPLICATION OF LAW TO THE FACTS

The court can now apply the reasonable hourly rate of $23.00 per hour to each of the cases heard by the court. Any excess fee must be disgorged to the case trustee.

---

[4]  At $23.00 per hour, a legal secretary would gross approximately $47,840 per year. Some make slightly more, some less. But as an average, this figure, and its method of calculation, is not unreasonable.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document      Page 27 of 31

| Debtor(s) | Case Nos. | Doc Prep Hours | Reasonable Fee Allowed | Paid | To be Disgorged & Paid to Trustee | Trustee |
|---|---|---|---|---|---|---|
| Robert R. Thueson, II | 4-08-bk-10121-JMM | 4 hrs 10 min | $95.83 | $400 | $304.17 | Mills |
| Archie Guerrero and Mary L. Guerrero | 4:08-bk-11130-EWH | 5 hrs 20 min | 122.66 | 400 | 277.34 | Kartchner |
| Richard J. Irbinskas and Mary P. Irbinskas | 4:08-bk-11365-EWH | 4 hrs 55 min | 113.08 | 400 | 286.92 | Kartchner |
| Miriam T. Castro | 4:08-bk-11454-EWH | 5 hrs 25 min | 124.58 | 400 | 275.42 | Mills |
| Luis J. Lopez, Jr. and Natalie I. Lopez | 4:08-bk-11703-EWH | 4 hrs 55 min | 113.08 | 400 | 286.92 | Maxwell |
| Annette Mazon | 4:08-bk-12181-EWH | 4 hrs 50 min | 111.16 | 400 | 288.84 | Lang |
| Craig Fallenberg | 4:08-bk-12199-EWH | 5 hrs 35 min | 128.41 | 400 | 271.59 | Maxwell |
| Lucinda M. Friend | 4:08-bk-13583-JMM | 4 hrs 45 min | 109.24 | 400 | 290.76 | Lang |
| Steven V. Richter | 4:08-bk-10080-JMM | 5 hrs 20 min | 122.66 | 400 | 277.34 | Lang |
| Karl Peipelman | 4:08-bk-11393-JMM | 5 hrs 50 min | 134.16 | 400 | 265.84 | Kartchner |
| Martin Palomino and Elizabeth V. Palomino | 4:08-bk-09803-EWH | 6 hrs 35 min | 151.42 | 400 | 248.58 | Maxwell |
| Charles E. Wolfsteller and Denise D. Wolfsteller | 4:08-bk-10244-EWH | 9 hrs 40 min | 222.33 | 400 | 177.67 | Mills |
| Yolanda V. Cuaron | 4:08-bk-11464-EWH | 4 hrs 35 min | 105.41 | 400 | 294.59 | Mills |
| Keith Bozdog and Crystal Blackwell | 4:08-bk-12297-EWH | 5 hrs 50 min | 134.16 | 400 | 265.84 | Kartchner |
| Graciela Salas | 4:08-bk-12326-EWH | 5 hrs 0 min | 115 | 400 | 285 | Kartchner |
| Micah C. Jacobs | 4:08-bk-11939-EWH | 5 hrs 35 min | 128.41 | 400 | 271.59 | Lang |
| Jill S. Swiss | 4:08-bk-12945-JMM | 4 hrs 35 min | 105.41 | 400 | 294.59 | Lang |

The court is cognizant of the fact that $200 per case has been the reasonable standard for a "no challenge" or "no look" document preparation fee in this District for 14 years. However, as the Ninth Circuit held in *Eliapo*, once a fee issue is brought up, the starting place is <u>not</u> from the

"no look" amount <u>forward</u>, but is instead the value of services provided from the <u>inception</u> of the engagement. *Eliapo*, 468 F.3d at 599-601.

By this ruling today, the court does not intend to challenge the long-established fee charged per case, <u>except</u> in cases where a document preparer desires a higher fee. In those instances, this court will scrutinize value from start to finish, as the Ninth Circuit observed was to be the procedure followed once a "no look" was turned into a "look."

Here, the "look" shows the reasonable fee, in most cases, to be <u>below</u> the $200 typically charged. That excess must therefore be disgorged in each applicable instance.

## **RULING**

RCH shall, in each of the foregoing cases, turn over the foregoing sums to be disgorged, to the Trustee of each such case.

In addition, this court will issue a permanent and continuing injunction preventing Richard C. Hoyt & Associates, Richard C. Hoyt, individually, Christopher Hoyt, individually, and David Hoyt, individually, from charging more than $200 per bankruptcy case, unless application is made to the court and a higher fee is proven to be reasonable.[5] Such injunction shall apply from the date of this Opinion forward.

The Clerk will now set for hearing, on orders to show cause, why fees charged by Hoyt in other cases at $400, which were not part of these hearings, should not be disgorged in whole or in part, for exceeding the $200 amount accepted in this District. As in the 17 cases decided today, each of those cases will require a separate evidentiary hearing.

---

[5] Section 110(j) allows the court to enjoin a document preparer from violating § 110. The court's Procedural Order to Show Cause notified Hoyt that the court would also be proceeding under § 110(j). *See Graves*, 279 B.R. at 274 (court may move sua sponte under § 110(j) if it gives adequate notice).

1    A separate order will issue. FED. R. BANKR. P. 9021. The Clerk shall file a copy of

2    this Opinion and the Order in each individual case. Any appeal must be taken within ten days. FED.

3    R. BANKR. P. 8002.

4

5            DATED AND SIGNED ABOVE.

Case 4:08-bk-10121-JMM    Doc 48    Filed 03/12/09    Entered 03/12/09 14:51:36    Desc
Main Document      Page 30 of 31

COPIES served as indicated below on
the date signed above:

| | |
|---|---|
| Henry Jacobs | Email henry.jacobs@azbar.org |
| Wayne Mortensen | Email azflo@cox.net |
| Stanley J. Kartchner, Trustee | Email trustee@kartchner.bz |
| Beth E. Lang, Trustee | Email bethelang@earthlink.net |
| Sharon Maxwell, Trustee | Email smaxwell@epitrustee.com |
| Gayle Eskay Mills, Trustee | Email Gayle.Mills@azbar.org |
| Elizabeth Amorosi, Office of the U.S. Trustee | Email elizabeth.c.amorosi@usdoj.gov |
| Keith Bozdog and Crystal Blackwell | U.S. Mail |
| Miriam T Castro | U.S. Mail |
| Yolanda V Cuaron | U.S. Mail |
| Craig Fallenberg | U.S. Mail |
| Lucinda M Friend | U.S. Mail |
| Archie Guerrero and Mary L Guerrero | U.S. Mail |
| Richard J Irbinskas and Mary P Irbinskas | U.S. Mail |
| Micah C Jacobs | U.S. Mail |
| Luis J. Lopez, Jr. and Natalie I. Lopez | U.S. Mail |
| Annette Mazon | U.S. Mail |
| Martin Palomino and Elizabeth V Palomino | U.S. Mail |
| Karl Peipelman | U.S. Mail |
| Steven V. Richter | U.S. Mail |
| Graciela Salas | U.S. Mail |
| Jill S Swiss | U.S. Mail |
| Robert R. Thueson, II | U.S. Mail |
| Charles E. Wolfsteller and Denise D. Wolfsteller | U.S. Mail |

By ____/s/ M.B. Thompson____
        Judicial Assistant